## THE ANSONIA v. SULLIVAN.

(Circuit Court of Appeals, Second Circuit. January 23, 1917.)

### No. 146

1. NEGLIGENCE ☞52—LANDOWNER—DUTY TO ANTICIPATE INJURY.

    Defendant, the proprietor of a hotel, extending from street to street maintained a delivery entrance reached by a passageway running from street to street. Defendant prohibited the use of the passageway at night by vehicles, stretching a chain across it. Owing to the darkness, the chain was practically invisible. Plaintiff's intestate, who had made a delivery at the hotel in the daytime, and did not know of the presence of the chain, was caught as he proceeded down the passageway, thrown to the pavement, and injured, so that he died. *Held*, that, as the hotel was a large one, and as defendant must have known that the delivery entrance would be used at all hours, and did not intend to prohibit pedes-

trians from so using it, it was guilty of negligence in failing to use some means of showing pedestrians the presence of the chain or barrier.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. § 65; Dec. Dig. ☞52.]

2. NEGLIGENCE ☞136(27)—CONTRIBUTORY NEGLIGENCE—WHAT CONSTITUTES.

In such case, as plaintiff's intestate did not know of the existence of· the chain, and had found the passageway safe in the morning, he was not guilty of contributory negligence as a matter of law in using the passageway, for one who passes along a sidewalk has a right to presume it is safe, and does not need to anticipate danger.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 336, 337; Dec. Dig. ☞136(27).]

3. NEGLIGENCE ☞134(1), 135—ACTIONS—JURY QUESTION.

In an action against defendant proprietor of a hotel for injuries resulting in the death of plaintiff's intestate, who was caught by a chain stretched across a passageway by defendant, *held*, that the evidence warranted a finding that defendant was negligent and that deceased was not contributorily negligent.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 267, 274–276; Dec. Dig. ☞134(1), 135.]

In Error to the District Court of the United States for the Southern District of New York.

Action by Catharine Sullivan, as administratrix of the estate of Edward J. Sullivan, deceased, against The Ansonia. There was a judgment for plaintiff, entered upon a verdict in her favor for $5,000, and defendant brings error. Affirmed.

Edgar J. Treacy and Alfred E. Holmes, both of New York City, for plaintiff in error.

Augustus L. Richards and Ralph S. Harris, both of New York City, for defendant in error.

Before COXE, ROGERS, and HOUGH, Circuit Judges.

COXE, Circuit Judge. At the time of the occurrences in question the defendant operated a large hotel fronting on Broadway and occupying the entire space between Seventy-Third and Seventy-Fourth ·streets for a considerable distance back from Broadway. The hotel is 18 stories in height and has accommodations for several thousand guests. A part is used for transient guests and a part is occupied by apartments, where the guests do their own housekeeping. The hotel has four main entrances for the use of guests—two on Broadway, one on Seventy-Third street and one on Seventy-Fourth street.

There is also a delivery entrance which opens into the basement where there is a service elevator for the delivery of merchandise and supplies of all kinds to the hotel and its guests. The only way of reaching the delivery entrance at the time in question was by a runway extending from street to street at the rear of the building. This run-·way was bounded by high walls on both sides. It was a one way road in the sense that vehicles could not pass each other while moving on the road proper. It was near the Seventy-Fourth street entrance that Sullivan received the injury which caused his death. A short distance from the entrance to the runway was a chain with rings at either

end. These rings were fastened to hooks in the opposite walls of the runway so that the chain sagged in the middle to about the height of a man's chest. There is a disagreement between the witnesses as to the exact height of the chain above the floor or pavement of the runway, but it is wholly unnecessary to attempt an accurate estimate in the face of the proof that the chain caught Sullivan and threw him down when he was endeavoring to deliver a package at the hotel. There can be little doubt that the purpose of the chain directly across the runway was to prevent delivery wagons going in after 6 o'clock. As one of the witnesses expressed it, "We don't allow any wagons down there after 6 o'clock summer or winter." This was the primary object of the chain and it was not intended to prevent pedestrians from transacting business with the hotel through the Seventy-Fourth Street entrance after that hour. The testimony is undisputed that servants and clerks having business with the hotel used the entrance without objection.

Sullivan had no notice of the chain and it does not appear that he was at this particular entrance at any time previous to March 21st, the day when he was killed. He was there during the morning of the 21st, but there was no chain across the runway at that time. At about half past 6 on March 21st the Gorham delivery wagon on which Sullivan was employed again drove up to the Seventy-Fourth street entrance and Sullivan, with his packages, started down the runway at a pace a little faster than a walk. When he reached the chain he was seen to "bound back" and fall. He was unconscious when the onlookers reached him, lying directly under the chain. He revived, but was taken violently sick soon after and died at the hospital the same evening.

There is no pretense that Sullivan was not an intelligent, careful man, with all his faculties unimpaired. There is no proof that he knew the custom of the Ansonia to put a chain across the runway at 6 o'clock. He had been there that morning and heard nothing and saw nothing to indicate that a chain was to be fastened across the roadway which was unobstructed in the morning.

[1] The defendant knew, or should have known, that this narrow entrance was being used at all hours of the day by tradesmen having business with the hotel. To them it was a plain, open, safe passageway where no dangers were to be apprehended. The defendant was at liberty to close this passage if it so desired, but it was its duty to do so in such a manner as to give notice to those who had used it that it was to be closed after 6 o'clock at night. A red light hung in the center of the chain would have given such notice. A gate painted white closed across the runway would probably have sufficed, but a single dark or rusted chain, hardly discernible in the dim light, gave a wholly inadequate warning.

[2, 3] The plaintiff's intestate, having used the passageway with perfect safety in the morning was justified in thinking that the same conditions prevailed, unless adequate notice was given to the contrary. The way was used by the employés of the hotel, practically all night, and the chain was intended not to stop them but to prevent horse-drawn wagons and motor cars from using the passageway after

6 o'clock. Pedestrians, not familiar with the custom of the hotel were liable to use it and they had a right to assume that a chain was not stretched directly across their path, invisible in the dusk or dim light. There were lights in the runway which might have revealed the situation but they were not lighted at the time of the accident.

The language of the New York Court of Appeals in McGuire v. Spence, 91 N. Y. 303, 43 Am. Rep. 668, is applicable:

"But one who passes along a sidewalk has a right to presume it to be safe. He is not called upon to anticipate danger, and is not negligent for not being on his guard. Whoever left this area in the sidewalk open and uncovered was guilty of a positive wrong. It amounted to an obstruction of the street. It was a trap set for the unwary, or for those hurried or inattentive. Nobody was bound to anticipate its existence, or to look for it, although it was visible. The plaintiff, therefore, was bound to no special care to avoid such an accident as happened, and the jury were justified on the facts in finding her free from negligence."

We think the questions of fact were fairly presented to the jury and their verdict was fully justified by the evidence.

Judgment affirmed with costs.

☜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes