## PHILLIPS PETROLEUM CO. v. MILLER.
### No. 10409.

Circuit Court of Appeals, Eighth Circuit.
June 6, 1936.

Walter L. Barnes, of Des Moines, Iowa, and Edward S. Stringer, of St. Paul, Minn. (O'Brien, Horn & Stringer, of St. Paul, Minn., and R. H. Hudson, of Bartlesville, Okl., on the brief), for appellant.

Roy J. Mohan, of St. Paul, Minn. (Arthur E. Nelson and Irving Levy, both of St. Paul, Minn., on the brief), for appellee.

Before GARDNER, SANBORN, and BOOTH, Circuit Judges.

GARDNER, Circuit Judge.

This is an action brought by appellee, Howard Miller, against the appellant, Phillips Petroleum Company, to recover damages for personal injuries alleged to have been suffered by him in falling through an open manhole in the washroom at a gasoline service station operated by appellant in St. Paul, Minn. From a verdict and judgment in favor of appellee, appellant has taken this appeal. We shall refer to the parties as they appeared below.

Plaintiff was employed as a bakery truck driver and salesman for Tassies' Bakery of St. Paul, and on the morning of April 20, 1934, drove his truck into the station of defendant, for the purpose of getting gas and oil. After supplying plaintiff's truck with gas, the station attendant advised him that he needed about two quarts of oil. Plaintiff decided, however, that, instead of adding the oil, he would have it changed, so he drove on the pit where the oil was changed, after which he walked into the washroom at the station, and fell into the manhole, then open and unguarded, on the floor of the washroom.

From the entrance of the door into the washroom to the manhole was about two and a half to three feet. Plaintiff had been in this service station on an average of twice a week for six months prior to this accident, and had been in the washroom a number of times prior to the accident. He says, "Almost every time I went into the station." There was a window in the washroom opposite the door entering it. The accident happened at about 10 o'clock in the morning. Plaintiff, in his testimony, said: "I don't remember which direction I was looking as I walked into this washroom. I certainly was not looking at the hole, or I would not have stepped into it. I said I don't remember which direction I was looking. I was not talking to the attendant while I was walking into it, I don't think." He also testified: "I don't remember as I walked into that washroom which way I was looking." He testified that he did not see the hole.

"Q. But you can not remember where you were looking? A. As I remember it, I was—I can't remember. This was back, but it seems to me that I was reaching through for the door because as the door is setting you have almost got to close the door to get to the toilet.

"Q. The door swings open into the washroom and after you get in you have to close the door? A. You have got to step kind of around it, as I remember it."

Plaintiff was uncertain whether the door was open or closed, but testified that it seemed to him that it was "just about half open and half closed." Plaintiff did not know there was a manhole in the washroom. From the entrance to the washroom to the opposite wall was about seven feet.

Under his contract of employment with the Tassies' Bakery, plaintiff furnished his own truck and the gas and oil consumed in operating it and was paid for his services on a commission basis.

The pertinent parts of Mason's Minnesota Statutes, 1927, are as follows:

"4291. *Liability of party other than employer—Procedure*—(1) Where an injury or death for which compensation is payable under part 2 of this act is caused under circumstances also creating a legal liability for damages on the part of any party other than the employer, such party also being subject to the provisions of part 2 of this act, the employe, in case of injury, or his dependents in case of death may, at his or their option, proceed either at law against such party to recover damages, or against the employer for compensation under part 2 of this act, but not against both. * * *

"The provisions of Subdivision 1 of this section shall apply only where the employer liable for compensation under part 2 of this act and the other party or parties legally liable for damages were engaged in the due course of business, (a) in furtherance of a common enterprise, or (b) the accomplishment of the same or related purposes in operation on the premises where the injury was received at the time thereof, and not otherwise."

Both Tassies' Bakery, plaintiff's employer, and defendant were insured and were operating under part 2 of the Minnesota Workmen's Compensation Act (Mason's Minn.St.1927, § 4268 et seq., as amended), and prior to the commence-

ment of this action plaintiff had received and accepted from his employer or its insurer workmen's compensation.

Defendant on this appeal makes the following contentions: (1) Plaintiff, having elected to receive and having accepted workmen's compensation, the action against the defendant should have been dismissed; (2) plaintiff was guilty of contributory negligence as a matter of law; and (3) the court erred in instructing the jury on the issue of contributory negligence and erroneously refused to give instructions requested by defendant on that issue.

1. Is the action barred by the provisions of the Minnesota Compensation Act above quoted? In considering this question, we are bound by the construction which the Supreme Court of Minnesota has placed upon the Minnesota statutes. Liggett & Myers Tobacco Co. v. DeParcq (C.C.A.8) 66 F.(2d) 678; E. C. Warner Co. v. W. B. Foshay Co. (C. C.A.8) 57 F.(2d) 656. The Supreme Court of Minnesota has construed the effect of the act in a number of cases and under various circumstances and conditions, and counsel for defendant earnestly contend that under this act, as construed by the Supreme Court, plaintiff here cannot recover because he has elected to receive workmen's compensation from his employer, which, it is contended, at the time plaintiff received his injuries was engaged with the defendant in the due course of business, in furtherance of a common enterprise, or the accomplishment of the same or related purposes in operation on the premises where plaintiff's injury was received. With equal earnestness and vigor, it is urged by counsel for plaintiff that the employer of plaintiff and the defendant were not engaged in the due course of business, either in furtherance of a common enterprise or the accomplishment of the same or related purposes at the time plaintiff received his injuries. It is therefore necessary to make some analysis of these decisions, particularly those rendered after the 1923 amendment of the act. The Supreme Court of Minnesota has not attempted to lay down any general rule applicable to all cases, but has in effect held that each case must be determined upon its own facts.

It seems clear that defendant and Tassies' Bakery, plaintiff's employer, were not engaged in a "common enterprise." Were they engaged in "the accomplishment of the same or related purposes n operation on the premises where the injury was received, at the time thereof?" We shall first refer to those cases decided subsequent to the amendment of 1923, in which the Supreme Court of Minnesota has held that the employer and the third person whose alleged negligence caused the injury were engaged in a common enterprise, or were working toward the accomplishment of the same or related purposes on the premises.

In Rasmussen v. George Benz & Sons, 168 Minn. 319, 210 N.W. 75, 77, 212 N.W. 20, the plaintiff was employed by an ice company. Defendant held a lease of ground, on which it had erected a building, part of which was a hotel leased to and occupied by a hotel company. Other tenants occupied other portions of the building. Defendant maintained a freight elevator and stairway adjacent thereto in the building. Plaintiff and a fellow workman delivered ice daily to the hotel company. On the day in question, he took a cake of ice on the elevator, and defendant's employee in charge thereof lowered it to the basement floor. Plaintiff then took the ice to the ice box while the elevator ascended to the first floor landing. Defendant's employee negligently caused a piece of tile to fall down the stairway on which plaintiff was ascending, injuring him. The Supreme Court held that the ice company and the defendant were carrying on services which were used in the accomplishment of related purposes. In the course of the opinion, the court said:

"To the extent of taking the ice from the first floor to the basement, defendant, with its elevator and the employee in charge thereof, was engaged in part in the due course of business for the accomplishment of a part of the business of the ice company. It was aiding in delivering the ice. Its purpose was thus to aid the ice company in accomplishing the delivery of the ice. What may be said as to the maintenance of the elevator applies equally to the maintenance of the stairway which Rasmussen used daily and on which he was traveling when injured. This was a means of return to or exit which was just as essential as the means of ingress. May it not be also said that the purpose of the business in which defendant was thus engaged on the premises, namely, the maintenance of the el-

evator and stairway for the purposes mentioned, was 'related' to the said business of the ice company, namely, the delivery of the ice which was in operation on the premises? Business is related when the parties are mutually or reciprocally interested in a commercial way; or where the business of one has a necessary relation toward or in conjunction with the other. The service of the one, the defendant, is complementary to the service of the other, the ice company. The ice company probably has but one purpose. The defendant may have many. It participates in the purposes of many. It has a fundamental reason of its own for its service. It apparently recognizes that the success of others is its success. It was maintaining co-operative instrumentalities to make successful the purposes of others. Its purpose in operation on the premises was related to the purpose of such others. If this be not so, we are unable to comprehend what set facts would invoke the application of subdivision (b) to the exclusion of those embraced in the term 'common enterprise' as used in subdivision (a)."

In McGrath v. Northwestern Trust Company, 178 Minn. 47, 225 N.W. 901, it was held that there was a related purpose. Defendant, as trustee, controlled and managed a building in St. Paul for the benefit of beneficiaries. Various portions of the building were leased to tenants. An elevator was maintained in the building for the convenience and service of tenants. It was used in carrying and transporting persons and merchandise. Plaintiff was an employee of an express company for the purpose of delivering packages for his employer to tenants in defendant's building. He went into the building, and, because of the negligence in maintaining the elevator, was injured.

In Egan v. E. A. Brown Co., 193 Minn. 165, 258 N.W. 161, 162, plaintiff was employed as a farm laborer on the farms of his employer. The employer exchanged work with other farmers during the threshing season. Plaintiff was injured at the elevator of the defendant while hauling grain from a farm owned by Henry Stubbe, where plaintiff was sent by his employer to repay Stubbe for work which he had done for the employer. It was held that, since the plaintiff had received compensation from his employer under the Compensation Act, the statute was a bar to the action by plaintiff against the elevator. The court there said:

"Under the circumstances as shown by the record, we are convinced that the defendant and plaintiff's employer were engaged in the accomplishment of the same or related purposes on the premises where the injury was received."

We now turn to a consideration of the cases in which the Supreme Court of Minnesota has held that, even where the employee had proceeded under the act against his employer, he was not precluded by the terms of the act from suing a third person whose negligence was the proximate cause of his injuries, for damages.

In Anderson v. Interstate Power Co. (Minn.) 263 N.W. 612, 614, plaintiff was employed by a telephone company as a line foreman, and it was his duty to look after the operation and maintenance of line wires of his company. The defendant was a power company owning and operating a power line extending north and south on the east side of the highway, while the telephone company owned and operated a telephone line extending in the same direction but on the west side of the highway. It was the claim of plaintiff that defendant caused its power line to be strung over the lines of the telephone company to a farmhouse, in such a negligent and careless manner that they came in contact with the telephone line and caused the fuse to be burned out on the power line; that, while plaintiff was in the act of attempting to locate the trouble on the telephone line, an employee of the power company, attempting to locate trouble on its line, negligently caused plaintiff to be injured. The court held that the businesses of the two companies were not so interrelated as to be a common enterprise and that the fact that the power company supplied the telephone company with a certain amount of electric power did not create such a relationship as to make the two "engaged in 'a common enterprise.'" The court said:

"We hold that the mere supplying of a necessary product, such as electric power, does not create the relationship of a common enterprise. Nor does the fact that both companies had sent out employees to locate the trouble alter the situation. It was not a joint or concerted

action. Each company was acting independently of the other."

The court held that the relationship of producer and consumer did not create a common enterprise, nor were they accomplishing "the same or related purposes." The court further said:

"However, the statute must be construed reasonably. The Legislature could never have intended that such a relationship between an employer and a third party should prevent an employee from recovering against the third party. The adoption of such a construction if carried to that conclusion which might be urged for it would mean that every company which supplied any product to another, and was itself subject to the provisions of the Workmen's Compensation Act, would be within this provision in the statute."

The court concluded that the plaintiff was not barred by the act from maintaining his action for damages against the third party.

In Taylor v. Northern States Power Co. (Minn.) 264 N.W. 139, defendant maintained an office and salesroom. Plaintiff was employed as society editor and reporter by a newspaper, and entered the office of defendant to pay her own bill and secure news for her paper. She slipped on the floor, and, in an action against the power company to recover damages, the court brushed aside as unsound the contention that, because plaintiff was entitled to and had received compensation from her employer under the Compensation Act, she was not entitled to recover in this action.

In Duus v. Duus, 181 Minn. 232, 232 N.W. 114, 115, the plaintiff was employed in a meat market and was injured while delivering a package of meat to the dining room of a hotel. At the time he received his injuries, repairs were being made at the hotel by another person for the proprietor. The plaintiff recovered judgment against other parties and then sought compensation from his employer under the Workmen's Compensation Act. It was held that he was not bound by the elective provision of the Compensation Act. The court, after reviewing a number of the Minnesota cases which had held that there were present the "related purposes" of the statute, said:

"We do not so regard the purposes of the employers in the case at bar. To hold thus we would have to say that the business of repairing the building was related to the business of furnishing supplies to the café. The connection between these purposes is altogether too distant to be termed relative. In this case there was no furtherance of the meat market's business or purposes by any of the defendants in the action at law. Nor was there any 'co-operative instrumentality,' as in the Rasmussen and McGrath Cases."

In Horgen v. Franklin Co-operative Creamery Ass'n (Minn.) 262 N.W. 149, 151, plaintiff was employed by a terminal company which let parts of its warehouse to various tenants, including the Paul E. Hawkinson Company, which occupied a part of the third floor of the building. Plaintiff was injured when one Rundquist, an employee of defendant, entered a freight elevator to sell and deliver milk to the employees of the Hawkinson Company for their noon meal, and started the elevator in motion just as plaintiff was in the act of removing therefrom a heavily loaded truck. The court held that Rundquist, while using the elevator and engaged in personal business with individuals who happened to work in the building, could not be said, by reason of any connection with the Hawkinson Company, to be engaged in the accomplishment of a related purpose to that of the terminal company.

These are the cases that must be considered, and it is somewhat difficult to determine the line of demarcation. In each of the three cases in which the defense was sustained, it will be observed that the injured employee went upon the third party's premises to use them for a purpose directly connected with carrying out his employers' business. In the instant case, it was only the necessity of obtaining the service and products that defendant was offering that brought plaintiff to its place of business. While plaintiff's employer and defendant were not competitors as in Gile v. Yellow Cab Corporation, 177 Minn. 579, 225 N.W. 911, neither were they in business for their mutual advantage. Plaintiff required gasoline and oil in the truck which he was driving and which he personally owned, so that the employer's business could be carried on: but it was his own truck,

and he was buying the gas and oil on his own account. His truck was at defendant's place of business on its invitation, so that it might carry out the purpose for which it maintained the service station, by operation of which it alone made a profit. In a very narrow and restricted sense, if at all, can it be said that there was any common enterprise, community of interest, or any use of a co-operative facility. The truck was not being used by defendant, but it was performing a service upon it for which it received compensation. Defendant's service station was used by plaintiff for such benefit as he might get out of the service and materials, and defendant's object, purpose, and business was to sell its goods and products. It is to be noted, too, that plaintiff did not go to the washroom until the car had been greased and filled with gasoline. That was the purpose for which the truck had been taken to the service station, and that was the use and purpose for which the service station was maintained. For no reason other than a personal one did plaintiff go to the washroom. There was no distinct relationship between his act of entering the washroom and any related purpose of plaintiff and defendant.

In Horgen v. Franklin Co-operative Creamery Ass'n, supra, in which it was held that the taking of lunch by the employees of the Hawkinson Company was not an act within the course of employment, but an individual act, the court said:

"Partaking of their lunch on, rather than off, the premises did not bring the employees, nor even the 'officials' of the Hawkinson Company within the course of their employment. They ate and drank not as employees or officials, but as individuals. Hence, providing them with their milk ration served them in their individual capacities and not as employees of the Hawkinson Company. The latter was not being served at all even though it may have preferred that they lunch on the premises."

We conclude that under the Workmen's Compensation Act, as construed and applied by the Supreme Court of Minnesota, plaintiff's employer and defendant were not "engaged in the due course of business, (a) in furtherance of a common enterprise, or (b) the accomplishment of the same or related purposes in operation on the premises where the injury was received at the time thereof" (section 4291), and that plaintiff is therefore not precluded, by having received workmen's compensation from his employer, from maintaining this action for damages against the defendant.

2. Was plaintiff guilty of contributory negligence as a matter of law? The question of negligence or contributory negligence is ordinarily one of fact for the jury [Pryor v. Strawn (C.C.A.8) 73 F.(2d) 595; Hampton v. Des Moines & C. I. R. Co. (C.C.A.8) 65 F.(2d) 899], and it is only where the inference of contributory negligence is so plain that all fair-minded men must so conclude upon a consideration of all the evidence, that the court is justified in so finding as a matter of law. The burden is upon defendant to prove contributory negligence. City of Winona v. Botzet (C.C.A.8) 169 F. 321, 23 L.R.A.(N.S.) 204.

Generally speaking, one is required to make reasonable use of his faculties of sight, hearing, and intelligence to discover dangers to which he is or may become exposed, and a failure so to do is negligence. Yet one is not required to regulate his conduct with reference to facts and conditions of which he is justifiably ignorant, and knowledge or appreciation of danger may not be imputed where, under the same or similar circumstances, an ordinarily prudent person would not have known or appreciated the danger. Nor, indeed, will knowledge be imputed as a matter of law, to one who fails to look for danger, which, under the prevailing circumstances and conditions, he had no reason to apprehend or anticipate. The Ansonia v. Sullivan (C.C.A.) 239 F. 296; Borger v. Kane (D.C.) 8 F.(2d) 362, affirmed Kane v. Borgio (C.C.A.) 12 F.(2d) 1016.

Great reliance is placed upon the decisions of this court in De Honey v. Harding, 300 F. 696, 700, and Chicago, R. I. & P. R. Co. v. Baldwin, 164 F. 826, 829. In the De Honey Case, plaintiff was stopping at a hotel, and, after having been there several days, on the occasion of her injury, instead of using the corridor and stairway in the hotel provided for use of guests, she walked into an open doorway and stepped into a descending stairway and fell. In the course of the opinion it is said:

"It appears from the evidence that the plaintiff, without any regard for her own safety, deliberately stepped from the lighted corridor into a darkened stairway, when, if she had used her eyes, she would have seen the stairway and avoided the accident."

In the Baldwin Case, a superintendent in charge of repairing the Missouri River railway bridge of the Union Pacific Railroad Company was overtaken and knocked off the track by a locomotive which came up behind him. In the course of the opinion it is said:

"Between the point where these two men parted and the place where he was overtaken there were at least three extended floor beams where he could have stepped out to the railing and have waited safely until both trains had passed. The bridge and the railroad tracks upon it in such frequent use were constant warnings of the danger of coming trains. It was his duty to exercise ordinary care to protect himself from them, and the exercise of that care required him to be so alert and watchful for his own welfare that trains, coming in plain view for the distance of a mile, which he could escape by looking behind him and by moving with reasonable celerity from their track, should not strike him upon it."

It is observed that in the last-mentioned case Baldwin was working in a place of threatened dangers, of which he was aware. With this knowledge, it was his duty to be alert and watchful for his own welfare. In the De Honey Case, plaintiff passed from the corridors and stairway provided for use of guests into an unknown, unused, dark stairway, with which she had no acquaintance and which she had not theretofore used.

In the instant case, however, plaintiff entered the half-open door into the washroom intended for his use, and which he had theretofore been using with safety for some six months prior to the accident. He did not know that there was a manhole in the room, and there was nothing to put him on guard. It was not possible to see the open manhole until the door was swung into the room a considerable distance, and the room was so small that in order to use the toilet he had to swing around the door and close it. The door to the washroom was an invitation to the public to step in. The door swung inward. It was only two and a half to three feet from the entrance to the manhole, and we do not think it can be said as a matter of law that one walking into this room should have anticipated that there would be th s dangerous hole within a step from the door. It must be remembered that plaintiff had been using this same facility, and he could not have anticipated that a trap would be set for him. He was not running into a place of known danger, nor was he running into an unknown place, but he was entering a place which he customarily frequented, and which he had a right to anticipate would be in a reasonably safe condition. It cannot, therefore, be said as a matter of law that plaintiff was guilty of contributory negligence, and that issue was properly left to the jury.

3. It remains to consider the contention that the court erred in instructing the jury, and in refusing to give requested instructions. Defendant requested instructions on contributory negligence as follows:

"4. It was the duty of the plaintiff to look where he was stepping before he advanced across the threshold of the washroom, and if you find that plaintiff did not look where he was stepping before he advanced across the threshold of the washroom, then he was guilty of contributory negligence, and your verdict must be in favor of the defendant."

"6. The defendant was not required to safeguard the washroom premises so as to prevent at all hazards injuries to a person who is oblivious of his surroundings, and if you find that the plaintiff walked into the washroom without looking or taking notice of the conditions existing therein, your verdict must be for the defendant."

"7. The evidence in this case shows, without dispute, that the washroom was sufficiently lighted at the time of plaintiff's accident so that the plaintiff could have seen the open manhole had he made reasonable use of his sense of sight, and if you find that plaintiff did not look where he was stepping before he crossed the threshold, or did not make reasonable use of his faculties of sight, your verdict must be for the defendant."

These instructions, we think, were properly refused. They were such as might properly have been given had this washroom been a place of known danger,

such as a railroad crossing, or had it been a place with which plaintiff was unfamiliar. But, under the circumstances disclosed by the evidence, plaintiff had no reason to suspect that there might be an open manhole in the floor. Instead of these requested instructions, the court submitted the question of contributory negligence in an instruction which reads as follows:

"The plaintiff was not required to fix his eyes upon the floor upon entering the room as though he expected to find a hole in the floor which he should avoid. He had a right to presume that the floor was in a reasonably safe condition for his use. The plaintiff was under the duty to make reasonable use of his faculties of sight and intelligence to discover conditions of danger in the washroom. If you find that the plaintiff failed to make reasonable use of his faculties of sight and intelligence before and at the time of entering the washroom, or toilet room, then he was guilty of contributory negligence, and if such negligence on his part contributed in some degree to his injuries, then he is not entitled to recover and your verdict should be for the defendant. The burden of proof is on the defendant to prove by a fair preponderance of the evidence that the plaintiff was guilty of contributory negligence."

It is urged that by this instruction the jury was told that plaintiff was not required to look in that part of the room where looking would be of any avail, but that in effect the jury was told that he might enter the room without paying any attention to the condition of the place he was entering. We do not think this contention tenable. It is based upon a consideration of a part only of the instruction. To give it such a meaning, the first sentence must be divided so that it will read: "The plaintiff was not required to fix his eyes upon the floor upon entering the room." But the court did not so instruct. That expression is modified by the remaining part of the sentence; to wit, "as though he expected to find a hole in the floor which he should avoid." He was not entering a place of known danger, nor, indeed, as we have already observed, a strange place, but he was entering a place intended for use in the very manner in which he was using it. There was not only a standing invitation to use it, but he had been so using it for some considerable time.

Even one who walks need not pass through life with his eyes cast down and fixed upon the place for his next step. To be sure, if he must cross a busy street, where the traffic is dense and swift moving, he must be alert and watchful for his own safety; and, if he enters an unknown dark stairway or an unfrequented way, he must do so with extreme caution; but, if his course is upon places intended for his use, with which he is familiar, threatened by no known danger, and having no reason to anticipate that any pitfalls had been placed in his path, he may cast his eyes to the side of the road, to the field, to the hilltops, or even to the skies, without violating the rule requiring ordinary care.

In St. Mary's Hospital v. Scanlon, 71 F.(2d) 739, we held in effect that one is not required to guard against that which a reasonably prudent person would not, under the circumstances, anticipate as likely to happen.

As applied to the facts and circumstances in this case, we think the instruction was not erroneous.

The judgment appealed from is therefore affirmed.