*Supp. 4 Opinion
REESE, J.-
I. Introduction and Procedural History
Defendant was charged in a misdemeanor complaint filed in the Pomona Municipal Court with knowingly and wilfully for profit manufacturing, distributing and selling a decoding device, not authorized by a licensed subscription service, which enabled television sets to unscramble subscription television audiovisual signals and to receive subscription television audiovisual signals without leasing a device from operators of subscription television service in violation of Penal Code section 593e.
On May 7, 1982, defendant filed a notice of hearing on demurrer to the complaint, and on June 4, 1982, the court sustained the demurrer without leave to amend upon the grounds that the field is preempted by section 605 of the Federal Communications Act of 1934 (47 U.S.C. § 605). On July 20, 1982, the court, in chambers and without counsel being present, based upon its prior ruling sustaining the demurrer without leave to amend, dismissed the case.
The People filed a notice of appeal prematurely on July 2, 1982, and on August 20, 1982, a second notice of appeal was filed untimely. Under the authority of People v. Leftwich (1979) 97 Cal.App.3d Supp. 6 [158 Cal.Rptr. 758), we find that the second notice of appeal was filed timely in that the judgment of dismissal was made in the absence of both counsel and neither counsel notified of the judgment until approximately one week after it had been issued.
II. Contentions of the People
The People appeal upon the grounds that the trial court erred in its view that section 593e of the Penal Code[1] is unconstitutional in that the electronic audiovisual communications field has been preempted by federal *Supp. 5 statute (47 U.S.C. § 605)[2] and that the trial court thus erred in its order sustaining defendant’s demurrer and in resultantly dismissing the case.
“Radio communications” as used in the Act has been construed to include television transmissions. (See Allen B. Dumont Laboratories v. Carroll (3d Cir. 1950) 1.84 F.2d 153, 155, and 47 U.S.C. § 153(b).)
III. Discussion
A. The Doctrine of Preemption
The United States Supreme Court has expressed certain fundamental principles which may be utilized by us in our analysis of the preemption issue presented by the case at bench. These are:
1. The proper approach is one of attempted reconciliation of the respective federal and state statutory schemes rather than attempted exclusion of one or the other. (Merrill, Lynch, Pierce, Fenner & Smith v. Ware (1973) 414 U.S. 117, 127 [38 L.Ed.2d 348, 359, 94 S.Ct. 383].) The courts should attempt “the necessary accommodation between local needs and the overriding requirement of freedom for the national commerce . . . .” (Freeman v. Hewit (1946) 329 U.S. 249, 253 [91 L.Ed. 265, 272, 67 S.Ct. 274]; See also Greater Westchester Homeowners Assn. v. City of Los Angeles (1979) 26 Cal.3d 86, 93 [160 Cal.Rptr. 733, 603 P.2d 1329].)
*Supp. 6 2. “[F]ederal regulation of an area of commerce may preempt state actions upon the same subject matter if (1) there is an apparent congressional intent to blanket the field, (2) the federal and state schemes directly conflict, or (3) any state intervention would burden or frustrate the full purposes and objectives of Congress. (Florida Avocado Growers v. Paul (1963) 373 U.S. 132, 141 [10 L.Ed.2d 248, 256, 83 S.Ct. 1210]; Rice v. Santa Fe Elevator Corp. (1947) 331 U.S. 218, 230-231 [L.Ed. 1447, 1459-1460, 67 S.Ct. 1146].) The controlling inquiry on the preemption issue is determining whether the state action stands ‘as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.’ (Hines v. Davidowitz (1941) 312 U.S. 52, 57, 67 [85 L.Ed. 581, 586-587, 61 S.Ct. 399].)” (Greater Westchester Homeowners Assn. v. City of Los Angeles, supra, at p. 93, italics added.)
3. Preemption should only be found to exist to the extent required to serve congressional purposes and objectives. (Id., at p. 94 (citing: Merrill, Lynch, Pierce, Fenner & Smith v. Ware, supra, at p. 127) [38 L.Ed.2d at p. 359].)
4. A firmly established rule requires that state action may be precluded “where it unreasonably affects or discriminates against interstate commerce, or touches upon a field of commerce which requires uniform national regulation.” (Ibid., [citing: U.S. Const., art. I, § 8, cl. 3; and A&P Tea Co. v. Cottrell (1976) 424 U.S. 366, 370-372 [47 L.Ed.2d 55, 60-61, 96 S.Ct. 923].)
B. Constitutionality of Penal Code, Section 593e As to Preemption Issue.
With the foregoing general principles guiding our consideration of the preemption issue, we proceed to discuss the constitutionality of section 593e of the California Penal Code.
1. Concurrent Federal and State Regulations.
The California courts have long recognized the legitimacy of concurrent state and federal regulation of the same activity. This policy is exemplified in wiretapping cases (People v. Conklin (1974) 12 Cal.3d 259, 273 [114 Cal.Rptr. 241, 522 P.2d 1049]); counterfeiting cases (In re Dixon (1953) 41 Cal.2d 756, 763 [264 P.2d 513]); regulation of interstate commerce (California v. Zook (1949) 336 U.S. 725, 731 [93 L.Ed. 1005, 1010, 69 S.Ct. 841]); sale of intoxicating liquor (United States v. Lanza (1922) 260 U.S. 377, 381-384 [67 L.Ed. 314, 316-318, 43 S.Ct. 141]); and sale of gasoline ration stamps (People v. Grosofsky (1946) 73 Cal.App.2d 15, 17 *Supp. 7 [165 P.2d 757]). The court in Grosofsky stated: “The state statute is not unconstitutional as an interference with the executive powers or jurisdiction of the United States Government. People v. Kelly (1869) 38 Cal. 145 [99 Am.Dec. 360] relied upon by appellants, does not sustain their position. The court there said: ‘The same act may, in some instances, be an offense against the laws of both [the United States and the state], and it is only as an offense against the state laws that it can be punished by the state, in any event.’ ” In KMLA Broadcast. Corp. v. Twentieth Century Cig. Vend. Corp. (C.D.Cal. 1967) 264 F.Supp. 35, 43-44, the court stated: “Where, as here, plaintiffs have been aggrieved by the activities of defendants in their violation of section 605 of the Communications Act of 1934, plaintiffs are entitled to recover damages from defendants .... [I]n addition to plaintiffs’ federal cause of action hereinbefore announced, it appears from the facts that plaintiffs have a pendant cause of action for unfair competition under California law. Congress has not preempted the adjustment of property rights in the communication field by the passage of the Communications Act of 1934.”
We find that section 593e of the California Penal Code is a state law which attempts to regulate the same subject as a federal law. That fact, alone, does not subject it to a status of invalidity unless it is inconsistent with federal law. As stated in People v. Conklin (1974) 12 Cal.3d 259, supra, at page 264, in determining the validity of such a law, “a variety of expressions have been used: ‘conflicting; contrary to; occupying the field; repugnance; difference; irreconcilability; inconsistency; violation; curtailment; and interference. But none of these expressions provides an infallible constitutional test or an exclusive constitutional yardstick. In the final analysis, there can be no one crystal clear distinctly marked formula.’ Hines v. Davidowitz (1941) 312 U.S. 52, 67, fn. omitted [87 L.Ed. 581, 587, 61 S.Ct. 399]; [citation].” We find, however, that the two-part test delineated in Florida Avocado Growers v. Paul (1963) 373 U.S. 132 [10 L.Ed.2d 248, 83 S.Ct. 1210], and restated in Head v. New Mexico Board (1963) 374 U.S. 424 [10 L.Ed.2d 983, 83 S.Ct. 1759] presents a viable and dependable vehicle of resolution. In Florida Avocado Growers, supra, at page 142 [10 L.Ed.2d at page 256], the high court states: “The principle to be derived from our decisions is that federal regulation of a field of commerce should not be deemed preemptive of state regulatory power in the absence of persuasive reasons either that the nature of the regulated subject matter permits no other conclusion, or that the Congress has unmistakably so ordained.” In Head, supra, at page 430 [10 L.Ed.2d at page 989], the high court states: “[S]tate statutes, otherwise valid, must be upheld unless there is found ‘such actual conflict between the two schemes of regulation that both cannot stand in the same area, [or] evidence of a congressional design to preempt the field.’ Florida Avocado Growers v. Paul, 373 U.S. 132, 141.”
*Supp. 8 2. Conflict Between The Legislative Schemes Federal and State
Distribution of decoding devices, not authorized by subscription television service, which enables television sets to unscramble subscription television visual signals and to receive subscription audiovisual signals without leasing decoders from operators of subscription television who have been licensed by the Federal Communications Commission, violates the Federal Communications Act of 1934, section 605, (47 U.S.C. § 605) provision prohibiting unauthorized interception and divulging or aid thereto, of radio communications. (National Subscription Television v. S & H TV (9th Cir. 1981) 644 F.2d 820.) Section 593e of the California Penal Code [3] prohibits the same activity, making the same a misdemeanor under state law. It specifically refers to interception of “over-the-air transmission by a s.t.v. made pursuant to authority granted by the FCC.” We find that this state statute acts to further the purposes of 47 United States Code section 605, and does not conflict with nor stand as an obstacle to the “accomplishment and execution of the full purposes and objectives of Congress.” (Hines *Supp. 9 v. Davidowitz (1941) 312 U.S. 52, at p. 67 [87 L.Ed. 581, at p. 587, 61 S.Ct. 399].)
3. Congressional Legislative Scheme
Defendant argues that Congress, by enactment of the Communications Act of 1934, assumed exclusive jurisdiction over the activities regulated by the Act. We disagree.
“The definition and adjustment of property rights and the protection of health and welfare are matters primarily of state law, and only a strong federal interest, as determined by Congress, will necessitate infringement upon state-created rights in these areas. Only a compelling federal interest, e.g., where the state-created liability would clearly frustrate federal purposes, justifies our implying an intent on the part of Congress to nullify common law rights normally in the state-law sphere.” (Loma Portal Civic Club v. American Airlines, Inc. (1964) 61 Cal.2d 582, 592 [39 Cal.Rptr. 708, 394 P.2d 548].) In the year 1934, Congress, even with its acutely developed prescience, could not have envisioned the dynamic advancements of scientific progress and modification in the electronic audio and visual communications field. Nor could Congress have foreseen the myriad of tort and criminal problems arising therefrom when it enacted the Communications Act of 1934 and created the Federal Communications Commission. Today, the commission controls and supervises numerous pay television subscription service franchises throughout the various states which are rapidly being enhanced in value as more and more subscribers enroll. Those citizens possessing franchises own a valuable property right to sell their programs via leased decoders to paying customers. Section 605 of the Act is supplemented and strengthened by a “theft of service” statute such as section 593e of the California Penal Code. That statute is merely a prototype of statutes to come in a rapidly developing and changing area of the law.[4] It is welcomed by the Congress and the Federal Communications Commission, as the high court stated in Head v. Board of Examiners, supra, at page 431 [10 L.Ed.2d at page 989]: “The nature of the regulatory power given to the federal agency convinces us that Congress could not have intended its grant of authority to supplant all the detailed state regulation . . . particularly when the grant of power to the Commission was accompanied by no substantive standard other than the ‘public interest, convenience, and necessity.’ ”
We conclude that California Penal Code section 593e is not constitutionally invalid by reason of preemption by section 605 of the Act.
*Supp. 10 By reason thereof, the judgment of dismissal is reversed. The matter is remanded to the trial court with directions to vacate its order sustaining defendant’s demurrer, to enter a new and different order overruling the demurrer, and to conduct such further proceedings as may be required by law.
Bernstein, Acting P. J., and Cooperman, J., concurred.

Section 593e of the California Penal Code: “Every person who for profit knowingly and willfully manufactures, distributes, or sells any device or plan or kit for a device, or printed circuit containing circuitry for interception or decoding with the purpose or intention of facilitating interception or decoding of any over-the-air transmission by a subscription television service made pursuant to authority granted by the Federal Communications Commission which is not authorized by the subscription television service is guilty of a misdemeanor punishable by a fine not exceeding two thousand five hundred dollars ($2,500) or by imprisonment in the county jail not exceeding 90 days, or both.”

Section 605 of the Federal Communications Act (the Act), 47 United States Code section 605: “No person receiving or assisting in receiving, or transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception, to any person other than the addressee, his agent, or attorney, or to a person employed or authorized to forward such communication to its destination, or to proper accounting or distributing officers of the various communicating centers over which the communication may be passed, or to the master of a ship under whom he is serving, or in response to a subpena issued by a court of competent jurisdiction, or on demand of other lawful authority; and no person not being authorized by the sender shall intercept any communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person; and no person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by wire or radio and use the same or any information therein contained for his own benefit or for the benefit of another not entitled thereto; and no person having received such intercepted communication or having become acquainted with the contents, substance, purport, effect, or meaning of the same or any part thereof, knowing that such information was so obtained, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of the same or any part thereof, or use the same or any information therein contained for his own benefit or for the benefit of another not entitled thereto: Provided, That this section shall not apply to the receiving, divulging, publishing, or utilizing the contents of any radio communication broadcast, or transmitted by amateurs or others for the use of the general public, or relating to ships in distress. June 19, 1934, c. 652, Title VI, § 605, 48 Stat. 1103.”

The legislative history of section 593e reveals the following relevant provisions of the bill analysis for Penal Code section 593e (Assem. Bill No. 3475) submitted to the Assembly Committee on Criminal Justice of the California State Assembly on June 9, 1980:
“Bill Description:
“Existing law makes it a misdemeanor for any person to knowingly and willfully make unauthorized connections, or attach unauthorized devices to a television set or component of a franchised cable television system for the purpose of intercepting any program carried by a franchised cable television system which such person is not authorized to receive (P.C. Section 593d). A violation of this section is punishable by a fine not exceeding $200 or imprisonment in the county jail not exceeding 30 days.
“Existing state law does not regulate the manufacture, sale, or use of devices designed for the unauthorized interception and decoding of the transmissions of subscription television services.
“AB 3475 would provide that any person who knowingly and willfully manufactures, distributes, or sells any device, plan, or part with the purpose or intention of facilitating interception or decoding of any subscription television transmission unauthorized by the subscription television service is guilty of a misdemeanor. This misdemeanor would be punishable by a fine not exceeding $2500 or by imprisonment in the county jail not exceeding 90 days, or both.
“Comments:
1. The purpose of this bill is to facilitate the control of piracy of subscription television broadcasts. Subscription television services do not transmit paid commercials, and are primarily supported by a monthly fee paid by their subscribers. The unauthorized interception and decoding of subscription broadcasts deprives the television service, and the parties owning transmission rights for broadcasts such as motion pictures and sporting events of potential income. . . .
2. Traditionally, crimes relating to signal piracy have been a federal concern, but recent federal policy has not provided vigorous prosecution in this area. The FCC is currently in the process of formulating its position on this bill; however, Counsel for the FCC recently expressed the preliminary opinions that AB 3475 would not create a preemption or a conflict of laws problem, and the FCC would not be opposed to state regulation of the manufacture and sale of interception and decoding devices in this area.”

Texas, New Jersey and Alaska also have enacted similar statutes.