## Gardner *v.* Allegheny County, Appellant.

Argued March 25, 1958. Before JONES, C. J., BELL, CHIDSEY, MUSMANNO, ARNOLD, JONES and COHEN, JJ.

*Maurice Louik,* First Assistant County Solicitor, with him *Philip Baskin,* Assistant County Solicitor, and *Nathaniel K. Beck,* County Solicitor, for County of Allegheny, appellant.

*William A. Blair,* with him *David B. Fawcett,* for plaintiffs, appellees.

*J. Garfield Houston,* with him *J. Henry O'Neill, Stephen E. Nash,* and *Blaxter, O'Neill & Houston,* for appellees.

OPINION BY MR. JUSTICE BELL, June 3, 1958:

The County of Allegheny appealed from an order of the Court of Common Pleas of Allegheny County which dismissed the preliminary objections filed by the County to certain *new matter* in the Answer of the defendant Airlines.\* A complaint in equity had been filed by the respective owners of five properties which are situate adjacent to the Greater Pittsburgh Airport in Moon and Findlay Townships, Allegheny County.

---

\* The appeal was taken under the Act of March 5, 1925, P.L. 23, §1, 12 PS §672.

In the court below, in this Court, and in all prior proceedings before this Court, the five actions were consolidated for argument and trial.

The complaint in equity of the respective property owners sought an injunction against the county and against all of the airline defendants to restrain allegedly dangerous and illegal flights of aircraft over their respective properties. Plaintiffs averred that these flights, which number 8 every ten to fifteen minutes, and which endangered their lives and their homes, were unlawful trespasses. The owners asked as an alternative relief, that the court (a) find that the acts of the defendants constituted a "taking" and (b) award to each plaintiff the fair market value of his property. The defendants filed preliminary objections to each of these complaints; these objections were overruled by the Court below. Upon appeal, this Court decided in *Gardner v. Allegheny County*, 382 Pa. 88, 114 A. 2d 491, that on the pleadings, as they then existed, the Court below (1) was correct in overruling the preliminary objections of the defendants to that part of the complaint which sought an injunction, (2) but was in error in overruling the County's objection to plaintiffs' claim for a "taking" of their respective properties, and (3) directed the lower Court to enter a modified Decree consistent with this Court's Opinion.

The Court below thereupon entered an Order on September 30, 1955, which was subsequently amended by its Order dated March 15, 1956, the effect of which was to strike from the plaintiffs' complaint all claims for damages for a "taking", leaving only a claim for injunctive relief and for damages for trespass. The lower Court wisely permitted the defendants to file Answers including new matter.

The airlines in paragraph 19a of their Answers averred the following new matter:

"19a. The County of Allegheny, one of the defendants, has constructed and maintains the Greater Pittsburgh Airport in Moon Township, Allegheny County, Pennsylvania, as a public improvement, pursuant to statutory authority to provide airport and air transport facilities for the use of the public. To enable the public to have facilities for air transport of passengers and cargo, which facilities are essential for the functioning of the airport, it is necessary that airplanes *enter and leave** the airport by passing *through the air space above the plaintiffs' property below 500 feet.* Allegheny County has entered into a lease with each of the airline defendants granting to them for certain considerations the right to ingress and egress to and from the said airport.

"As a direct and necessary consequence of the construction and operation of the airport by the said County, the said County, *under its right of eminent domain,* has appropriated for public use, *aviation easements* for the flight of planes through the air space over the plaintiffs' property to the extent necessary to enable them to enter and leave the airport. The airline defendants aver that their planes pass through the air space over the plaintiffs' property only to the extent necessary to enter and leave the airport and in the exercise of their right to use the aviation easements which the County has appropriated. Wherefore, the airline defendants deny the right of the plaintiffs to enjoin their use of the aviation easements appropriated for public use by the County of Allegheny."

Defendants further averred that "all of the flights of aircraft in and out of the Greater Pittsburgh Airport have been in accordance with the regulations issued by the Civil Aeronautics Administration [Board]

---

* Italics throughout, ours.

. . . and are never lower than necessary for safe landing and takeoff."

The County of Allegheny thereupon filed preliminary objections to paragraph 19a of the new matter in the Airlines' Answers on the ground that the allegations presented a question which this Court, in our prior decision, had decided was not within the jurisdiction of a Court of Equity. ·

This appeal, which is based upon new facts, raises new questions which were not before this Court, as well as questions which were not definitely decided by this Court in *Gardner v. Allegheny County*, 382 Pa., supra. The lower Court interpreted our prior decision as prohibiting a Court of Equity from making an award of damages for a "taking", but did not prohibit the Court of Equity *from determining* that there had been a "taking", and did not prohibit a Court of Equity from awarding damages for trespasses.* The County of Allegheny, on the other hand, contends that a Court of Equity—for technical, legal and practical reasons— should not be entitled to determine the question of whether there had been a "taking", and then leave to a board of viewers merely the question of assessing the damages.

Novel, intricate and difficult questions are raised by this appeal. Each party has presented technical, as well as practical, reasons why their position should be sustained. We believe it would aid a solution of these problems if we pointed out what was and what was not decided by this Court in *Gardner v. Allegheny County*, 382 Pa., supra. It must be recalled that this case, as well as the prior case, arose upon preliminary

---

* It is obvious that a Court of Equity could award damages for trespasses only if, and after it found that plaintiffs were entitled to equitable relief, because of the danger to the lives or properties of plaintiffs.

objections to pleadings, which of course admitted all averments of fact made in the complaints in the prior cases and in the Answer in the present case: *DeJoseph v. Zambelli,* 392 Pa. 24, 139 A. 2d 644; *Eways v. Reading Parking Authority,* 385 Pa. 592, 124 A. 2d 92; *Gardner v. Allegheny County,* 382 Pa., supra.

In our prior decision in 382 Pa., this Court held, inter alia: (1) A Court of Equity has jurisdiction to enjoin repeated trespasses in the air which endanger the lives and homes of complainants, as well as trespasses on the land of a property owner, and likewise to enjoin a nuisance. (2) A Court of Equity has jurisdiction to enjoin continuing flights of aircraft over a landowner's property at heights which are below the minimum safe altitudes of flight. Whether a Court of Equity has jurisdiction to enjoin aircraft flights which are within the air space necessary for safe takeoffs or landings if such flights imminently endanger a property owner's life or property, was not decided. (3) Flights of aircraft over privately owned land which are so low and so frequent as to be a direct and immediate interference with the use and enjoyment of the land amount to a "taking" of the land or, depending on the facts, may amount to a trespass or a nuisance. Even though only an "easement" of flight was taken, that easement, if permanent and not merely temporary, would normally be the equivalent of a fee simple interest. (4) The Act of May 2, 1929, P. L. 1278, which was reenacted in the Second Class County Code, specifically directs the appointment of viewers to ascertain, determine and assess damages in any condemnation proceeding when compensation cannot be agreed upon. (5) A Court of Equity has no jurisdiction to assess damages for a "taking" of land.*

---

* An opinion for the Court, a concurring opinion, a separate concurring opinion, and an opinion concurring in part and dissenting

On the question of eminent domain, which was so vigorously argued in the present appeal, this Court said in 382 Pa.:

"Nevertheless, a Court of Equity has no power or jurisdiction to assess damages for a 'taking'. The condemnation of property for airdromes and landing fields is authorized by the Act of May 2, 1929, P. L. 1278, Art. V, §496, since reenacted in the Second Class County Code, 16 PS 2151-2401 et seq. Section 2151-2403 provides: 'The proceedings for the condemnation of lands under the provisions of this article [Aeronautics] and for the assessment of damages for property taken, injured or destroyed shall be conducted in the same manner as provided [by law for the condemnation of land.]'

"Art. VII, §518, of the Act of May 2, 1929, P. L. 1278, now reenacted in the Second Class County Code, 16 PS 2151-2608(a), sets forth the provisions for the condemnation of land above referred to. The section provides: 'In case the board of commissioners or a majority of them and the parties interested in the land, property or material appropriated, injured or destroyed by the county fail to agree upon the compensation to be made for the land, property or material so taken, injured or destroyed, upon petition . . . to the court of common pleas of said county, the said court shall appoint three viewers from the county board of viewers, . . . .

" 'The said viewers . . . having viewed the premises . . . shall hear all parties interested and their witnesses, and, . . . shall estimate, determine and assess the damages for the land, property or material taken, injured

in part were filed in this case, which is exceptionally unusual in this Court and was probably necessitated by the somewhat indefinite statement of facts and the novel questions of law presented.

or destroyed, and to whom the same is payable, . . .': Article VII, §523.

"That Act specifically directs the appointment of viewers to ascertain, determine and assess damages in any condemnation proceeding, when compensation cannot be agreed upon. Nowhere in the Act is there any provision for a Court in Equity to fix and determine the value of plaintiffs' property. This Court, in Hastings Appeal, 374 Pa. 120, 97 A. 2d 11, said (page 125): 'A board of view is not a common law remedy; it exists only where it has been provided for by statute: see Locust Street Subway Case, supra, [319 Pa.] at p. 165. In the situations for which it has been provided, it is the only available remedy: Power v. Borough of Ridgway, 149 Pa. 317, 318, 24 A. 307; and McKee v. City of Pittsburgh, 7 Pa. Superior Ct. 397, 400; . . .'. . . .

"While there is a well established general principle that once equitable jurisdiction has attached, equity can round out the whole circle of controversy and thus do complete justice between the parties: See: Wortex Mills, Inc. v. Textile Workers Union of America, 380 Pa. 3, 109 A. 2d 815, and cases cited therein; nevertheless, this principle cannot be extended and gives no power or jurisdiction to a Court of equity to grant relief in matters in which a specific and adequate remedy or different jurisdiction is provided by statute: United Drug Co. v. Kovacs, 279 Pa. 132, 123 A. 654; Century Distilling Co. v. Continental Distilling Co., 106 F. 2d 486.

"We therefore hold that a Court of Equity has no power or jurisdiction to determine or assess damages for a 'taking' of plaintiffs' property and is consequently without jurisdiction to grant that phase of the alternative relief demanded by the plaintiffs."

While the members of this Court differed on several questions there involved, all of the Court were unanimously of the opinion that a Court of Equity could not award compensation for a "taking".

It is clear from the present pleadings that plaintiffs have been damaged, and the questions are: Who must pay for this damage, what action or actions can be brought by plaintiffs, and who are proper parties therein? The answer to these questions will depend, in the last analysis, upon the facts developed at the trial of the case. For example, the nature and extent of the trespasses; the amount of interference with plaintiffs' lives or properties; whether frequent and dangerous and unlawful flights will amount to trespasses or by their nature, character and frequency, are so permanent as to amount to a "taking"; and if a "taking", whether it be a "taking" of an easement or a fee simple—all of these questions will, in the last analysis, we repeat, depend upon the facts which are produced at the trial at law.

We are aware of the fact that the airlines have pleaded, and the county has admitted, by its preliminary objections to the new matter contained in the airlines' answer, that the county, ". . . under its right of eminent domain, has appropriated for public use, aviation easements for the flight of planes through the air space over the plaintiffs' property to the extent necessary to enable them to enter and leave the airport. . . . Allegheny County has entered into a lease with each of the airline defendants granting to them for certain [valuable] considerations the right of ingress and egress to and from the said airport . . . [and] it is necessary that airplanes enter and leave the airport by passing through the air space above the plaintiffs' property below 500 feet."

Everyone knows that it is necessary for planes *in landings and takeoffs* to pass through the air space below 500 feet. The airlines and the county have admitted for the first time that airplanes pass through the air space above the plaintiffs' properties below 500 feet in takeoffs and landings.

The parties agree that private airlines have no right of eminent domain. The County of Allegheny, pursuant to statutory authority, has appropriated for public use, under its power of eminent domain, aviation easements for the flight of planes and has constructed, operated and leased this airport. Under the present pleadings, the County of Allegheny is liable in eminent domain proceedings for damages to plaintiffs' properties—plaintiffs have the choice to bring an action of trespass, or proceedings for a "taking" against the County of Allegheny for their damages, depending upon the facts provable by plaintiffs.

We decide that the Court of Equity does not have jurisdiction under the pleadings in this case *to determine* that there was a "taking" of plaintiffs' properties, or the amount of damages resulting from a "taking" of the easement, or of the fee of the plaintiffs, as the case may be.

The Second Class County Code provides, as hereinabove set forth, that viewers shall be appointed "to determine and assess the damages for the land, property or material taken, injured or destroyed . . . ." See also: Article I, §10; Article XVI, §8 of the Pennsylvania Constitution; Amendments to the Constitution of the United States, Article V. As the County of Allegheny points out, if a Court of Equity could or would make a determination that there was a taking of an easement, this would be contrary to the spirit and, we believe, to the language of the Code and of our prior decisions and would raise new and difficult questions: Would

the board of viewers be bound by such a decision or could the board make a determination that there was a "taking" of a fee simple instead of an easement, or that there was no "taking" at all?  As the present Chief Justice said in *Powell Appeal*, 385 Pa. 467,* 123 A. 2d 650 (page 471-472) : "While the Act does not expressly authorize viewers to decide questions other than such as relate to land values or damages or benefits to the affected property, it is implicit that a jury of view must decide all relevant questions of law or fact before it can competently make an award of damages or assessment of benefits: see Case of the Germantown and Perkiomen Turnpike Road Company, 4 Rawle 191. . . . '[The viewers] were bound to dispose, in the first instance, of all the matters committed to them, whether constituted of law or of fact, subject however to review by the sessions.' "**

It is only fair and just to all parties concerned that the pending equity proceedings by plaintiffs against the County of Allegheny and the airlines should be and they are hereby stayed until the eminent domain proceedings or the actions of trespass which may be brought by the plaintiffs against some or all of the present defendants have been brought and completed, or have been waived under §2632 of the Second Class County Code and finally determined in such a proceeding.  This stay of proceedings shall be without prejudice to the right of each party to subsequently file, if desired, answers, replications and other pertinent pleadings.

---

\* Where the State Highway Law of 1945 provided for the ascertainment and assessing of damages for land taken for the construction or improvement of any State Highway, but there was *no specific* authority granted to the Court of Quarter Sessions or to the board of view *to determine* whether there had been a "taking".

\*\* Court of Quarter Sessions.

The Orders of the Court of Common Pleas of Allegheny County dated January 2, 1958, at October Term, 1953, Nos. 1289, 1640, 1288, 1706 and 1707 are hereby reversed, and proceedings are hereby stayed in accordance with this Opinion. Each party shall bear his, its and their respective costs in this appeal.