[S. F. No. 21483. In Bank. March 17, 1964.]

NORTHERN CALIFORNIA ASSOCIATION TO PRESERVE BODEGA HEAD AND HARBOR, INC., Petitioner, v. PUBLIC UTILITIES COMMISSION, Respondent; PACIFIC GAS & ELECTRIC COMPANY, Real Party in Interest.

Garry, Dreyfus & McTernan, Benjamin Dreyfus and Donald L. A. Kerson for Petitioner.

Phillip S. Berry as Amicus Curiae on behalf of Petitioner.

Richard E. Tuttle, Mary Moran Pajalich and Donald B. Day for Respondent.

Richard H. Peterson, Frederick T. Searls, John C. Morrissey, Malcolm A. MacKillop and Leland R. Selna, Jr., for Real Party in Interest.

Golis, Frederick, Swenson & Sater and Paul Golis as Amici Curiae on behalf of Respondent and Real Party in Interest.

McCOMB, J.—Petitioner seeks review of orders of the Public Utilities Commission (hereinafter referred to as "respondent commission") (1) denying petitioner's petition to reopen proceedings relating to the application of Pacific Gas and Electric Company (hereinafter referred to as "the company") for a certificate of public convenience and necessity to construct a nuclear power unit at Bodega Bay, in Sonoma County, California, and (2) denying petitioner's petition for a rehearing on said petition to reopen.

*Facts*: October 4, 1961, the company filed with respondent commission an application for a certificate of public convenience and necessity to construct a nuclear fuel steam electrical generating plant at Bodega Bay. After due notice, public hearings were held in San Francisco March 7, 8, and 9, 1962, and the matter was then submitted to respondent commission for decision.

Following submission and prior to decision, respondent commission received a number of routine protests, as a result of which, by order dated April 24, 1962, it set aside the submission and reopened the matter for further hearings, which were held in San Francisco May 21 and 22 and June 6, 7, and 8, 1962.

June 8, 1962, the matter was again submitted, subject to receiving certain late-filed exhibits. This procedure was in accordance with respondent commission's rules and was agreed to by the parties. No request was made by any party to delay the submission until the late-filed exhibits could be examined by the parties or cross-examination had with respect to them.

The last late-filed exhibit (exhibit 48) was filed July 9, 1962, one month after the close of the hearings, and was available for inspection by any interested party.

There were eight days of public hearings, spread over four months. The company presented five witnesses and 23 exhibits. Thirteen additional witnesses testified in support of

its application and presented seven exhibits. Seventeen witnesses appeared in opposition to the application, and they presented 21 exhibits.

Petitioner[1] and the Sierra Club,[1a] each represented by counsel, participated actively in the hearings, presenting witnesses and exhibits and cross-examining the company's witnesses.

November 8, 1962, five months after the close of the hearings and four months after the filing of exhibit 48, respondent commission issued an interim order (Decision No. 64537)

---

[1]Petitioner had an unincorporated predecessor, and the designation ''petitioner'' will hereinafter refer to both petitioner and its predecessor.

[1a]The Sierra Club has filed an amicus curiae brief in support of the petition herein, contending that the company was required to show that alternative uses of the plant site (i.e., for recreational and aesthetic purposes) would not serve the public better than the proposed use and that it failed to make such a showing.

During the last days of the hearings before respondent commission, the Sierra Club filed a written ''Motion for a Ruling on the Relevancy of Evidence in Regard to Application.'' The motion noted that ''a great volume of testimony has been offered by the Sierra Club directed against the Application *upon the theory that appropriation of Bodega Head for atomic industrial purposes is not the highest and best use of that land.*'' It acknowledged that the testimony had been received but stated that some question had been raised as to whether respondent commission would actually consider the testimony as relevant when making its decision. The Sierra Club requested a specific ruling on the relevancy of that testimony as "the foundation for appeal, if necessary.''

With reference to the question raised by the Sierra Club motion, respondent commission stated, in its certificate decision issued November 8, 1962, under the heading ''Findings'': ''The testimony presented in this proceeding covered such a wide spectrum of public interest that questions were raised as to the relevancy of certain testimony as related to the Commission's determination of public convenience and necessity. In our opinion, it is not possible, on this record, to segregate any particular type of testimony and state unequivocally that it is irrelevant to the determination of public convenience and necessity. *All the evidence has been considered,* and after the weighing thereof we have arrived at our findings.

''Many of the protestants seemed to take the position that the nuclear plant and either marine biology or conservation are mutually exclusive, that one cannot exist alongside the other. *The record, however, belies their position.* Spokesmen for both the University of California's proposed marine biology station and the State Division of Beaches and Parks made it clear that they are not opposing the nuclear plant and that it will not interfere with their respective plans for operations and land use on Bodega Head.'' (Italics added.)

The issues raised in the amicus curiae brief are not properly before this court, since no petition for rehearing was filed setting forth said grounds. (Pub. Util. Code, § 1732.)

unanimously granting the company a conditional certificate to install, operate, and maintain a nuclear steam plant at Bodega Head.

This certificate decision discussed the issues that had been raised during the hearings, including safety, conservation, economics, requirements of the Atomic Energy Commission, and the requirements and desires of various state agencies. It also noted: "Applicant must secure a construction permit and four licenses from the Atomic Energy Commission to assure, among other things, that the nuclear unit can be constructed and operated without undue risk to the health and safety of the public."

The certificate decision became effective November 28, 1962. On that date petitioner filed a petition for rehearing, signed by David E. Pesonen, who, as a leader of those who opposed the company's Bodega plant, participated in the hearings both as a witness and as a cross-examiner.

In its petition for rehearing petitioner took issue with the radiation standards used during the hearings, contended that inadequate attention had been given to reactor safety, and claimed that efforts to cross-examine the company's witnesses regarding reactor reliability were discouraged by the presiding examiner.[2]

The petition for rehearing concluded with a request that the certificate decision be set aside and a rehearing granted "so far as new information can be brought to bear."

January 2, 1963, respondent commission denied the petition for rehearing. (Decision 64731.) Petitioner did not appeal.

One of the documents addressed to respondent commission in response to the petition for rehearing was a nine-page letter from Alexander Grendon, Coordinator of the Office of

---

[2]With regard to the problem of earthquakes and the late-filed exhibit relating thereto (exhibit 48), the petition stated: "The issue of the San Andreas Fault's proximity to the proposed reactor location was considered at length during the May and June hearings. Yet the sum of the testimony on record was inconclusive. It dealt almost entirely with the effect on the reactor structure—principally the vessel—in the event of an earthquake. The record was so inconclusive on this point that the Commission staff requested further exhibits, and submission of these late filed exhibits was the note on which the hearings closed.

"Decision 64537 reflects no more attention to these exhibits than the simple act of receiving them. Further, consideration of the effects from a jolt along the Fault on the delicate 'fail-safe' control mechanisms of the reactor does not appear in the record. This again reflects the casual attention forthcoming from the Commission's one outnumbered technical staff-man. . . ."

Atomic Energy Development and Radiation Protection in the Office of the Governor of the State of California. In addition to pointing out a number of inaccuracies in the petition for rehearing, Mr. Grendon raised a new issue, namely, federal preemption of the control of construction and operation of nuclear plants.

January 15, 1963, petitioner filed another petition with respondent commission, this time seeking an injunction to halt certain road and site preparation work which had been commenced by the company after the certificate decision became effective November 28, 1962. February 13, 1963, respondent commission denied the petition, noting that after considering the various briefs and making an independent investigation of the company's activities at Bodega Bay, it found those activities to be in accord with the authorization granted in the certificate decision. (Decision 64913.)

May 6, 1963, over five months after the certificate decision became effective, 10 months after exhibit 48 was filed, and 11 months after the close of hearings, petitioner filed with respondent commission a third petition, written by Mr. Pesonen, to reopen the whole matter for further hearing. This petition consisted almost entirely of the contention that there were innumerable inconsistencies between the testimony of the company's witnesses at the hearings and the company's late-filed exhibit 48 in the proceeding.

Petitioner requested that respondent commission reverse its stand, deny the company's application, and reopen hearings on the ground that respondent commission had been misled by, and had not properly considered, the company's evidence and that due process now required an opportunity to cross-examine the company's witnesses with regard to exhibit 48, which had been filed 10 months earlier.

The company filed an answer, pointing out that the petition was too late and was, in fact, another application for a rehearing on the certificate decision.

The answer further pointed out that the alleged inconsistencies in the company's evidence were, in fact, not such, and that, in any event, full opportunity to explore such alleged inconsistencies would be available in hearings before the Atomic Energy Commission, the expert body which would have to pass on and license the construction and operation of the plant.

July 9, 1963, respondent commission denied the petition to reopen. (Decision 65701.) The majority opinion was signed

by three of the five commissioners. One commissioner concurred in the result, and one commissioner dissented.

It is significant that in the order denying reopening, the majority, although taking the position that Congress had shown an intention to preempt the field, did not categorically state that respondent commission had no jurisdiction. Rather, the order simply provides: "The Atomic Energy Commission has scheduled hearings in California in which testimony on the safety of the proposed site of the nuclear reactor and standards of its construction and operation will be produced. *It would seem that petitioner's expert testimony might better be considered by the AEC than this Commission.*" (Italics added.)

At the same time, other reasons for denial of the petition were given, such as (1) petitioner's failure to request cross-examination with respect to late-filed exhibit 48 either before issuance of the certificate decision or at the time it petitioned for rehearing on November 28, 1962; (2) petitioner's waiting until 10 months after the filing of the exhibit before claiming an absence of due process and then proposing to offer new evidence but failing to specify in any particularity of what such evidence would consist; and (3) the fact that the certificate decision was conditioned upon the company's obtaining the necessary permits and licenses required by law for the construction and operation of the proposed plant, including a construction permit and license from the Atomic Energy Commission pursuant to the Atomic Energy Act of 1954 (42 U.S.C. § 2011 et seq.).

Commissioner Mitchell, in a concurring opinion, differed with the majority in regard to the consideration that should be given to the fact that the Atomic Energy Commission would hold hearings. He stated that his concurrence was based on a "complete review of the sworn evidence adduced before the California Public Utilities Commission after eight days of public hearing" on application 43808. He noted that such application had been filed October 4, 1961, over a year and a half before the petition to reopen, and that all interested parties had had ample opportunity to present convincing evidence to respondent commission as to why the application should not be granted but that "if, as the protestants allege, such evidence exists, it has not been submitted to this Commission under oath (or even by way of affidavits, to this date)."

Respondent commission's order denying the petition to reopen became effective Monday, July 29, 1963. Wednesday,

July 31, 1963, petitioner filed a petition for rehearing thereon. This petition was denied August 20, 1963. (Decision 65914.)

September 17, 1963, petitioner filed with this court its petition for writ of review "to review the decision denying reopening and the decision denying a rehearing therefrom."

These questions are presented:

█ First. *Has the federal government preempted the question of the safety of the location of atomic reactors?*

*No.* Congress, in an amendment to the Atomic Energy Act in 1959, sought to define the relative jurisdictions of the Atomic Energy Commission and the states with regard to nuclear development. (42 U.S.C. § 2021.)

Subdivision (a) of section 2021 provides that it is the purpose of the act to recognize the interests of the states in the peaceful uses of atomic energy, clarify the respective responsibilities of the states and the Atomic Energy Commission, establish programs for cooperation between the states and the Atomic Energy Commission, provide an orderly regulatory pattern and provide for coordination in the development of radiation standards, and establish procedures and criteria for discontinuance of the Atomic Energy Commission's responsibilities with respect to byproduct, source, and special nuclear materials and the assumption of those responsibilities by the states.

Subdivision (k) of section 2021 reads: "Nothing in this section shall be construed to affect the authority of any State or local agency to regulate activities for purposes other than protection against radiation hazards."

In view of subdivision (k) of section 2021, respondent commission unquestionably has authority to inquire into safety questions apart from radiation hazards. Accordingly, since the location of an atomic reactor at or near an active earthquake fault zone involves safety considerations in addition to radiation hazards, it is clear that the federal government has not preempted the field, at least with respect to the phase of protecting the public from hazards other than radiation hazards, and that the states' powers in determining the locations of atomic reactors are not limited to matters of zoning or similar local interests other than safety.

Second. *Should the orders of respondent commission be affirmed?*

*Yes,* for these reasons:

█ (a) Petitioner claims that it is here asking for a review of respondent commission's decisions 65701 (denial of

reopening) and 65914 (denial of rehearing with respect to denial of reopening). However, a reading of the petition discloses that petitioner is really once again seeking a rehearing of the certificate decision which became effective November 28, 1962.[3]

Petitioner first petitioned for a rehearing of the certificate decision November 28, 1962. Respondent commission denied that petition January 2, 1963, and petitioner did not seek review by this court within the 30 days allowed by section 1756 of the Public Utilities Code.

In *Young* v. *Industrial Acc. Com.*, 63 Cal.App.2d 286 [146 P.2d 693], a similar situation was presented. The petitioner there failed to seek rehearing of an Industrial Accident Commission decision within the time prescribed by statute. He then filed with the commission a petition to reopen. The commission denied his petition. Then, as petitioner did here, he sought judicial review of the denial, basing his arguments on alleged defects in the original commission decision. The court, in affirming the denial of the petition to reopen, said, at pages 291-292: "Having failed to apply for a rehearing within the time limit fixed by the code he cannot accomplish the same purpose by a petition to reopen, that petition differing in form only, not in its substance, from a petition for a rehearing."

The petition to reopen, filed over five months after the certificate decision became effective, was obviously not made within the time limit fixed by section 1731 of the Public Utilities Code for making petitions for rehearing.

Even taken as a petition to reopen, petitioner's pleading below came too late. ■ There is no statutory right to reopen commission proceedings once submitted and decided. The only provision for reopening proceedings once submitted is contained in rule 75 of respondent commission's Rules of Practice and Procedure, which rule requires that a petition to reopen be filed before issuance of a decision.[4]

---

[3]Petitioner states in its petition for a writ of review that "although ... the proper relief in this situation would be to annul the Commission's order in No. 64537 [the certificate decision], petitioner is simply requesting that the proceedings be reopened," thus conceding that what it seeks is a rehearing of the proceedings leading to the certificate decision.

[4]Rule 75 of respondent commission's Rules of Practice and Procedure reads: "After conclusion of hearings, *but before issuance of a decision*, a party to the proceeding may serve on all other parties, and file with the commission, a petition to set aside submission and reopen the proceeding for the taking of additional evidence. Such petition shall specify the

Petitioner did not comply with the requirements of that rule, even though it had four months in which to do so between the filing of exhibit 48 and the filing of the certificate decision. Petitioner thus failed to take timely advantage of any of the procedural avenues available to it.

It cannot now cure its failure seasonably to seek judicial review of the certificate decision by the device of a series of late-filed petitions, basing its right to review on the latest among them, when, in fact, it is seeking review of the basic decision. If such a device were allowed, one obtaining a certificate from respondent commission could never safely act under it without fear of later attack.

The court in *Young* v. *Industrial Acc. Com., supra,* 63 Cal.App.2d 286, accurately stated, at page 294: "If a basis can be secured for the judicial review of an award by petitioning for a rehearing of a petition to reopen (on no new ground) then the twenty day limitation placed upon the right to petition for a rehearing becomes meaningless, for a petition to reopen where no new factor is presented differs from a petition for a rehearing in name and form only. We are of the opinion that the Legislature had no intention of authorizing a judicial review of an award to follow an aggrieved party's petition filed, not within twenty days after service of the award, but possibly years later."

(b) Even if the petition is regarded as an appeal to respondent commission to exercise its discretion under section 1708 of the Public Utilities Code,[5] petitioner is in no better position, as a proper exercise of discretion is not subject to judicial review. (*Ashbury Truck Co.* v. *Railroad Commission,* 52 F.2d 263, 267 [2], affd. 287 U.S. 570 [53 S.Ct. 94, 77 L.Ed. 501].)

Respondent commission did not refuse to exercise its discretion under section 1708 or indicate an erroneous belief

---

facts claimed to constitute grounds in justification thereof, including material changes of fact or of law alleged to have occurred since the conclusion of the hearing. It shall contain a brief statement of proposed additional evidence, and explain why such evidence was not previously adduced." (Italics added.) (Cal.Admin. Code, tit. 20.)

[5]Section 1708 of the Public Utilities Code provides: "The commission may at any time, upon notice to the public utility affected, and after opportunity to be heard as provided in the case of complaints, rescind, alter, or amend any order or decision made by it. Any order rescinding, altering, or amending a prior order or decision shall, when served upon the public utility affected, have the same effect as an original order or decision."

that it had no jurisdiction to reconsider its prior decision. It pointed out that its interim decision granting the company a certificate was conditioned on the company's securing a construction permit and license from the Atomic Energy Commission, and it could properly consider, as one of the grounds for not reopening its own decision, the fact that the question of the plant's safety would again be fully reviewed by the Atomic Energy Commission.

■ (c) An examination of the record discloses that evidence of possible hazards to the public other than radiation hazards was presented to respondent commission[6] and that after full consideration it found that the location was a safe one. Under the rules hereinabove stated, respondent commission had authority to make such a determination with respect to hazards to the public other than radiation hazards.

Accordingly, the orders of respondent commission are affirmed.

Gibson, C. J., Traynor, J., Schauer, J., Peters, J., Peek, J., and Pierce, J. pro tem.,* concurred.

---

[6]For example, the record shows that evidence was presented concerning safety factors in regard to transmission lines from the plant. There was expert testimony to the effect that underground conduits would contain large quantities of inflammable insulating oil, which could create a fire hazard to the public in the event of a severe earthquake, and that the lines would have to traverse the San Andreas fault zone. For this reason, respondent commission approved overhead circuits.

In addition, questions were raised regarding the safety of the proposed tidelands access road and the safety of fishing fleets and other vessels seeking to enter the harbor at a time when the entrance might be closed because of an atomic accident. With respect to the latter, there was expert testimony to the effect that an accident which would contaminate such a large area that the harbor would have to be closed was in the *incredible* class.

*Assigned by Chairman of Judicial Council.