[L. A. No. 27070. In Bank. Aug. 11, 1964.]

LOMA PORTAL CIVIC CLUB et al., Plaintiffs and Appellants, v. AMERICAN AIRLINES, INC., et al., Defendants and Respondents.

Driscoll, Harmsen & Wilkins and John Gerald Driscoll, Jr., for Plaintiffs and Appellants.

O'Melveny & Myers, Pierce Works, Warren M. Christopher, Louis T. LaTourrette, Higgs, Fletcher & Mack, DeWitt A. Higgs, Dan E. Hedin, Gibson, Dunn & Crutcher, Samuel O. Pruitt, Jr., McInnis, Focht & Fitzgerald and J. W. McInnis for Defendants and Respondents.

PETERS, J.—This case arises out of the efforts of the owners of property near a public airport to enjoin certain flight operations. We hold that the refusal of the trial court to grant the injunction here sought was proper.

The use of large and powerful aircraft has created certain annoyances—noise, vibrations, and in some cases apprehension —to many people. The questions as to whether an individual should have redress for such annoyances, and, if so, under what theory and against whom, are very troublesome. These problems have become aggravated by the advent of jets, which are noisier than reciprocating engine craft and which require longer and shallower glide paths. (Anderson, *Some Aspects of Airspace Trespass*, 27 J. Air L. & Com. 341, 348.) The problems are peculiarly acute for landowners near airports, who suffer not only from the increase in the general noise level but particularly from their proximity to the low-level flying which is a necessary part of takeoff and landing. On the other hand, the great public benefit, in terms of commerce, transportation and defense, which is derived from the use of jet aircraft is obvious..

Plaintiffs are individuals who reside in the Loma Portal area of San Diego, and a nonprofit corporation whose members are also residents of that area. Loma Portal lies to the west of

Lindbergh Field, and is in the flight path of the jet aircraft using that field's long jet runway. Defendants are commercial airlines which fly passenger jets into and out of Lindbergh Field. The operator of the field was not made a party.[1]

The complaint alleges that defendants' jets fly "in great numbers at excessively low altitudes and within the air space immediately above or in close proximity to the homes of residents of the Loma Portal area, . . . and below a safe altitude of flight; that in such flights such jet aircraft cause deafening, disturbing and frightening noises and vibrations, disrupt and interrupt sleep and repose and the use of telephone, television and radio; disrupt, interrupt and prevent normal conversation and communication; create fear, nervousness and apprehension for personal safety; injuriously affect the health,

---

[1]This is important. In *Griggs* v. *County of Allegheny*, 369 U.S. 84, [82 S.Ct. 531, 7 L.Ed.2d 585], it was held that the county, which owned and operated the airport, was obligated under the Fourteenth Amendment to compensate Griggs for the "taking" of his property. The fact that the glide paths there used were within the navigable airspace declared by Congress did not preclude the holding that there had been a "taking" of private property. The question of the rights of owners vis-a-vis airlines was not discussed by the court, nor did it examine the scope of application of state tort law. The history of that litigation reveals that Griggs had originally brought suit against both the county and several airlines, seeking an injunction or compensation. On appeal, involving preliminary jurisdictional attacks, the Pennsylvania Supreme Court held that federal legislation had not preempted the field so as to totally preclude relief under state law, and that the state court had jurisdiction to enjoin trespasses and nuisances as well as to award compensation. (*Gardner* v. *County of Allegheny*, 382 Pa. 88 [114 A.2d 491, 498 et seq.].) However, under Pennsylvania law there existed a special procedure for the assessment of damages in condemnation cases, with exclusive jurisdiction in a board of viewers. A subsequent appeal held that plaintiffs "have the choice to bring an action of trespass, or proceedings for a 'taking,' " and that the board of viewers, not an equity court, determines both the fact of a "taking" and the compensation therefor. (*Gardner* v. *County of Allegheny*, 393 Pa. 120 [142 A.2d 187, 192].) Griggs chose the latter alternative, charging a "taking" as of the date the airport opened. The board of viewers found as a fact that the county had "taken" an interest in Griggs' land. The airlines were no longer involved. It was yet another appeal, *Griggs* v. *County of Allegheny*, 402 Pa. 411 [168 A.2d 123], in which the Pennsylvania Supreme Court had held that the county was not liable for any "taking," which the United States Supreme Court reviewed. The latter court stated that the issue before it was "whether respondent has taken an air easement over petitioner's property for which it must pay just compensation as required by the Fourteenth Amendment." (*Griggs* v. *County of Allegheny, supra,* 369 U.S. 84-85.)

habits and material comforts of plaintiffs, and prevent the normal use and reasonable enjoyment of their homes." The prayer for relief seeks an injunction against defendants prohibiting their operation of jet aircraft "at low altitudes in close proximity to such residences in such manner and at such times as to interfere unreasonably with the normal use and enjoyment by plaintiffs of their homes." The prayer also seeks "such further and other relief as the court may deem proper in the premises." There is no prayer for damages, nor does anything in the complaint indicate in monetary terms the amount of damage sustained. Thus the action may be characterized as an action to enjoin a claimed nuisance. The trial judge, in granting the motion for summary judgment, stated that there had been no prayer for damages, and that he treated the complaint as seeking only an injunction. Plaintiffs did not move to amend in this respect, nor do they contend now on appeal that they are seeking damages. Therefore, we must affirm the summary judgment if there exists any defense in law which precludes the granting of the prayed-for injunction.

Lindbergh Field was owned and constructed by the City of San Diego.[2] It has been in operation for over 35 years and has been used for regularly scheduled jet operations since 1960. The long jet runway, in its present size and location, was initially constructed during World War II with federal funds to accommodate heavy bombers. The California Aeronautics Commission has issued to Lindbergh Field the permit required under section 21663 of the Public Utilities Code. The field is part of the national airport plan (see 49 U.S.C. § 1102) and is one of four major west coast terminals. The master plan for its development has been approved by the Federal Aviation Agency (hereinafter FAA). It has received grants of federal funds under section 1103 of title 49 of the United States Code since 1951, as a condition of which the city has agreed to the following: that it will operate the airport for the public use and benefit; that it will operate in a suitable manner the airport and all facilities connected therewith which are necessary for airport purposes; that it will "either by the adoption and enforcement of a zoning ordi-

---

[2]Since the trial court hearing, Lindbergh Field has been transferred to the San Diego Unified Port District. This transfer has no effect on the determination of the questions herein presented.

nance and regulations or by the acquisition of easements or other interests in lands or air space,'' prevent the use of land outside its boundaries in any manner which would create a hazard to the landing, taking off, or maneuvering of aircraft at the airport or otherwise limit the usefulness of the airport; and that the master plan layout of the field shall be approved by the FAA. The Lindbergh Field Airport Traffic Control Tower is staffed and operated by FAA employees. The Lingbergh Field Traffic Pattern Area includes the area within a 5-mile horizontal radius from the center of the airport, and aircraft entering that area are required to establish radio communication with the control tower and comply with clearances and instructions. (14 C.F.R. §§ 91.75, 91.85 (revised as of Jan. 1, 1964).)

The FAA is directed to formulate policy and prescribe air traffic rules and regulations governing the use of navigable airspace (49 U.S.C. § 1348), including rules ''for the protection of persons and property on the ground'' (49 U.S.C. § 1348(c)). (See generally Air Traffic and General Operating Rules, 14 C.F.R., subch. F (revised as of Jan. 1, 1964).) There is regulation of operations in the vicinity of airports. (14 C.F.R. § 91.85.) According to the affidavit of the FAA's Western Region Assistant Administrator, ''the Agency, in cooperation with the aviation industry, has endeavored through engineering research and continued re-evaluation of aircraft operations to reduce the level of noise. Such studies with associated improvements are continuing today.''

The defendant airlines have FAA airworthiness certificates (under 49 U.S.C. § 1423(c)) for each aircraft operated by them. Pacific Southwest Airlines has an FAA commercial operator certificate and the other lines have air carrier operating certificates (under 49 U.S.C. § 1424) and certificates of public convenience and necessity (under 49 U.S.C. § 1374), under which they are obligated to provide ''safe and adequate'' service (see 49 U.S.C. § 1374(a)) to San Diego. Under their leases with the city, the airlines have the right to use the airport and all its appurtenances, including ''the landing field and any extensions thereof or additions thereto . . . and all other conveniences for flying, landing and take offs. . . .''

Although defendants' affidavits might have been more explicit in certain respects, plaintiffs did not sufficiently plead, nor do they claim, that they can make out a case on

the hypothesis that a significant portion of defendants' over-flights are in violation of federal law, that they are so conducted as to be imminently dangerous to plaintiffs, or that they are inconsistent with, rather than in furtherance of the public interest. Defendants have averred that they operate under obligation to provide safe and adequate service in the public interest, that their activities are conducted under extensive governmental supervision (enforceable by effective sanctions), and that their operations have, as a general matter, been determined to be in the public interest. Plaintiffs filed no counteraffidavits. The complaint attempted only to set forth a cause of action sounding in nuisance, i.e., unreasonable interference with plaintiffs' use of their property, and sought only injunctive relief. Under these circumstances, the prayed-for injunction was properly denied, as a matter of law, and, therefore, we must affirm the summary judgment. **[2]** Under the pleadings and the uncontradicted affidavits filed by defendants, there is no substantial issue to be tried. In such a case, summary judgment is appropriate. (*Goldstein* v. *Hoffman*, 213 Cal.App.2d 803, 810-811 [29 Cal.Rptr. 334] ; Code Civ. Proc., § 437c.)

█ Where a prima facie case has otherwise been made out, an injunction will be granted only when such a remedy is appropriate, and in determining the availability of injunctive relief, the court must consider the interests of third persons and of the general public. (Rest., Torts, §§ 933, 942.) The national interest in commerce, transportation and defense is furthered by the operation of scheduled passenger, freight and postal jet carriage into and out of San Diego. The people of San Diego and of the State of California benefit from these operations. Plaintiffs do not contend that defendants' operations are not in furtherance of the public interest.

█ It is well established that public policy denies an injunction and permits only the recovery of damages where private property has been put to a public use by a public service corporation and the public interest has intervened. (See *People* v. *Ocean Shore Railroad*, 32 Cal.2d 406, 421 [196 P.2d 570, 6 A.L.R.2d 1179] ; *Hillside Water Co.* v. *City of Los Angeles*, 10 Cal.2d 677, 688 [76 P.2d 681] ; *Gurnsey* v. *Northern Cal. Power Co.*, 160 Cal. 699, 709 [117 P. 906, 36 L.R.A. N.S. 185].) This principle is based upon the policy of protecting the public interest in the continuation of the use to

which the property has been put, not upon any dilatoriness by a property owner in asserting his rights, nor upon a justification that the property rights were subject in any event to condemnation. Defendants' jet service is in the public interest and the public has come to rely on and have a substantial stake in the continuation of that service.

Numerous statutory provisions give us guidance in the ascertainment of the public policy here involved.

Congress has determined that "There is recognized and declared to exist in behalf of any citizen of the United States a public right of freedom of transit through the navigable airspace of the United States" (49 U.S.C. § 1304), which is defined to include "airspace needed to insure safety in take-off and landing of aircraft." (49 U.S.C. § 1301(24).) Our own Legislature has provided, in section 21403 of the Public Utilities Code, that:

" (a) Flight in aircraft over the land and waters of this State is lawful, unless at altitudes below those prescribed by federal authority, or unless so conducted as to be imminently dangerous to persons or property lawfully on the land or water beneath. . . .

" (b) The right of flight in aircraft includes the right of safe access to public airports, which includes the right of flight within the zone of approach of any public airport without restriction or hazard. The zone of approach of an airport shall conform to the specifications of the Technical Standard Order of the Civil Aeronautics Administration of the Department of Commerce designated TSO-N18."

Subdivision (b), which was added in 1957, was apparently enacted specifically to deal with flight operations in the vicinity of an airport, and, under accepted rules of statutory construction, should be interpreted as enlarging upon the right of flight which exists elsewhere. The provision that these flight operations, if conducted in conformity with federal law, shall be "without restriction" indicates a policy against interference with such operations by the injunctive process, a policy clearly called into play under the circumstances of this case.

Yet another indication of California policy in this area is found in section 731a of the Code of Civil Procedure. That section provides:

"Whenever any city, city and county, or county shall have

established zones or districts under authority of law wherein certain manufacturing or commercial *or airport* uses are expressly permitted, except in an action to abate a public nuisance brought in the name of the people of the State of California, no person or persons, firm or corporation shall be enjoined or restrained by the injunctive process from the reasonable and necessary operation in any such industrial or commercial zone *or airport* of any use expressly permitted therein, nor shall such use be deemed a nuisance without evidence of the employment of unnecessary and injurious methods of operation. . . ." (Italics added.) The italicized words, making the statute expressly applicable to airport uses, were added in 1959, and indicate an intent that such uses be favored in this state and are not to be enjoined unless it is clearly established that such uses are being carried out in both an unnecessary and injurious manner.

 It is clear, therefore, that it would be contrary to the policy of this state to grant an injunction against flight operations in the vicinity of a public airport, conducted by regularly scheduled, certificated airlines, not alleged to be conducted in violation of federal orders and regulations or in an imminently dangerous manner, and not alleged to be carried on in a manner inconsistent with the public interest inhering in the continuation of such service. *Anderson* v. *Souza,* 38 Cal.2d 825 [243 P.2d 497], which permitted an injunction at the instance of adjoining landowners, is not inconsistent herewith. In that case, in which the defendants were the operators of the airfield, the court expressly pointed out that it was dealing with a private airfield, "the establishment of which requires no finding by any public agency of public convenience and necessity." (*Anderson* v. *Souza, supra,* at p. 842.)

We note, too, that there exists an extensive array of enforcement devices available to the federal authorities for preventing and punishing violation of federal law, and that such proceedings may be initiated by complaint of any interested party. (See generally 49 U.S.C. §§ 1429, 1471-1474, 1481-1489.) To be sure, this in itself would not preclude an injunction under state law, for the state court is concerned not with providing an additional sanction for the enforcement of federal law, but with the protection of state-created rights. But it is a factor to be considered.

Nothing herein is intended to be a determination of the

rights of landowners who suffer from airplane annoyances to seek damages from the owners or operators of aircraft or to seek compensation from the owner or operator of an airport. Nor is any determination intended with respect to the rights of the parties when private airplanes and airports are involved. We hold here that under the facts of this case, i.e., the operation of aircraft with federal airworthiness certificates in federally-certificated, scheduled passenger service, in conformity with federal safety regulations, in a manner not creating imminent danger, and in furtherance of the public interest in safe, regular air transportation of goods and passengers, an injunction is not available.

Defendants, in addition, vigorously urge that the refusal to grant the injunction can also be supported on the ground of federal preemption, i.e., that state action affecting any aspect of flight operations is precluded by the extensive pattern of federal regulation in this field. We are not persuaded of the soundness of this contention. A holding of federal preemption would have the effect of disabling the state from any action in the entire field, and placing in the federal government complete and sole responsibility for regulation of all aspects of that field. Such a holding by a single state court would have, of course, no effect on the conduct of other states with respect to regulation of that field, and unless Congress had in fact intended such preclusion of state regulation and were to carry out its responsibilities, there would result within that state a lacuna which the state would be powerless to fill. As was said in *Charles Dowd Box Co.* v. *Courtney,* 368 U.S. 502, 505 [82 S.Ct. 519, 7 L.Ed.2d 483], quoting from the opinion of the Massachusetts Supreme Judicial Court: "In the absence of a clear holding by the Supreme Court of the United States that Federal jurisdiction has been made exclusive, we shall not make what would be tantamount to an abdication of the hitherto undoubted jurisdiction of our own courts."

Preemption is, of course, a matter of legislative intent. In ascertaining this intent, with respect to the federal-state field, the test applied by the courts is whether the enforcement of state law would conflict with the purposes of the federal legislation, whether by frustrating an affirmative federal purpose or by interfering with a matter intentionally left unregulated by Congress. It is far from clear that every

enforcement of any state-created right or duty which affects air transportation would conflict with the purposes of the federal regulation, which, in the context of this case, is primarily the purpose of insuring safety of operations. Moreover, we note that noise abatement is a federal as well as a state aim, and when not inconsistent with safety, the enforcement of a damage remedy under a nuisance theory, for example, would not necessarily present a conflict with federal law but might well reinforce it. To be sure, the supremacy clause precludes the enforcement of state law which conflicts with federal law, e.g., we could not enjoin a pilot from flying in the landing pattern that he was ordered to follow by the control tower, and it is for this reason, not preemption, that a state may not prohibit that which federal authority directs.

The definition and adjustment of property rights and the protection of health and welfare are matters primarily of state law, and only a strong federal interest, as determined by Congress, will necessitate infringement upon state-created rights in these areas. Only a compelling federal interest, e.g., where the state-created liability would clearly frustrate federal purposes, justifies our implying an intent on the part of Congress to nullify common-law rights normally in the state-law sphere. In *People* v. *Western Air Lines, Inc.*, 42 Cal.2d 621, 645 [268 P.2d 723], we said, ''Any doubts on the subject should be resolved in favor of state power for the principal reason, as stated, that the regulation of intrastate fares of common carriers traditionally has been subject to state regulation.'' In *California Oregon Power Co.* v. *Superior Court*, 45 Cal.2d 858 [291 P.2d 455], we rejected a claim of preemption, despite regulation under the Federal Power Act (which, like the Federal Aviation Act, has a saving clause) of dams on navigable streams, and held that a state court had jurisdiction to entertain an action by the state to abate a nuisance. It was noted that ''Here we are concerned with the abatement of a nuisance, in a sense a local police measure.'' (At p. 868; see also *Northern Cal. Assn. to Preserve Bodega Head & Harbor, Inc.* v. *Public Utilities Com.*, *ante*, p. 126 [37 Cal.Rptr. 432, 390 P.2d 200].)

Here we have an expression of the intent of Congress. The Federal Aviation Act expressly declares that ''Nothing contained in this chapter shall in any way abridge or alter the remedies now existing at common law or by statute, but

the provisions of this chapter are in addition to such remedies.'' (49 U.S.C. § 1506.) Thus, it is clear that the federal legislation was not intended to be exclusive.

The imposition of state personal property taxes on aircraft operating in interstate commerce is permissible. (*Braniff Airways, Inc.* v. *Nebraska etc. Board of Equalization & Assessment,* 347 U.S. 590 [74 S.Ct. 757, 98 L.Ed. 967]; in this case it was noted that many states have aeronautics acts (see, e.g., Pub. Util Code, § 21001 et seq.) and that these are not precluded by federal legislation in the field.) Also, state courts may entertain wrongful death actions against airlines. (*Porter* v. *Southeastern Aviation, Inc.,* 191 F.Supp. 42; *Southeastern Aviation, Inc.* v. *Hurd,* 209 Tenn. 639 [355 S.W.2d 436], appeal dismissed, 371 U.S. 21 [83 S.Ct. 120, 9 L.Ed.2d 96] (''for want of a substantial federal question'') (intrastate airline).) The presence of a federal license is not of independent significance. (See *Huron Portland Cement Co.* v. *City of Detroit,* 362 U.S. 440 [80 S.Ct. 813, 4 L.Ed.2d 852, 78 A.L.R.2d 1294], noted at 74 Harv.L.Rev. 132.) In *Huron,* it was held that the city was not precluded from applying its antismoke ordinance to a ship whose boiler was built in compliance with federal safety requirements and had received federal approval after inspection. And in *Anderson* v. *Souza, supra,* 38 Cal.2d 825, 839, we held that the federal declaration with respect to navigable airspace did not divest property owners of their rights.

*Allegheny Airlines* v. *Village of Cedarhurst,* 238 F.2d 812, which contains broad preemption language, is not contrary to our conclusions. That case held invalid an ordinance prohibiting flights over the village at altitudes below 1,000 feet. Despite the preemption language, however, the court was there dealing with an ordinance which ''plainly conflicts with the federal statutes and regulations'' (*id.,* at p. 814). Moreover, that action, in the words of the trial court, did ''not affect the rights of property owners''; their claims, based on nuisance and trespass, had been withdrawn (*Allegheny Airlines* v. *Village of Cedarhurst,* 132 F.Supp. 871, 873). In fact, there had been a specific finding that there was ''no evidence that the operations constitute a trespass or nuisance to the people of the Village'' (*Allegheny Airlines* v. *Village of Cedarhurst, supra,* 238 F.2d 812, 816). Nor did *City of Newark, New Jersey* v. *Eastern Airlines, Inc.,* 159 F.Supp.

750, hold that the operation of state law, in that case the law of New Jersey, was precluded. The first count in that action, under a nuisance theory, sought an injunction against operations over certain areas at altitudes below 1,200 feet. The district court viewed this as an amendment to the Civil Air Regulations and denied relief, applying the doctrine of primary jurisdiction. The second count sought an injunction and damages on a trespass theory. The court stated (p. 760) that ''The principles do not foreclose the right of the landowner to maintain an action for trespass to realty in a proper case.'' However, relief was denied because plaintiffs had failed to present sufficient evidence to support their claims. It is to be noted that it had been stipulated that all operations were in accord with federal law. Finally, it is clear, of course, that state courts have jurisdiction to award compensation for a ''taking,'' without regard to whether the overflights conform to federal law, when such relief is appropriate. In *Griggs* v. *County of Allegheny, supra,* 369 U.S. 84, 86, the court expressly stated that no flights were in violation of federal regulations, yet relief was granted.

In conclusion, we hold that an injunction to prohibit a nuisance was properly denied, as a matter of law, under the circumstances of this case, because there is an overriding public interest in the operation of aircraft with federal airworthiness certificates in federally certificated, scheduled passenger service, in a manner not creating imminent danger, and in accordance with applicable statutes and regulations.

The judgment is affirmed.

Gibson, C. J., Traynor, J., Tobriner, J., and Peek, J., concurred.

Schauer, J., and McComb, J., concurred in the judgment.

Appellants' petition for a rehearing was denied September 10, 1964.